IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANA W.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civ. No. 6:19-cv-01830-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Dana W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for award of benefits.

## BACKGROUND

On November 1, 2016, Plaintiff filed a Title XVI application for supplemental security income alleging disability beginning on November 15, 2015. Tr. 14. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on September 27, 2018. *Id.* On November 20, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 26. On September 17, 2019, the

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of November 1, 2016. Tr. 16.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: posttraumatic stress disorder ("PTSD"); depressive disorder not otherwise specified; borderline personality traits; and dependent personality disorder. Tr. 16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: she can understand, remember, and carry out simple routine repetitive tasks with no more than occasional contact with coworkers or the public. Tr. 19.

At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 25. The ALJ found at step five that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, specifically that Plaintiff could perform work as a housekeeping cleaner, mail clerk, or small products assembler. Tr. 25-26. As a consequence, the ALJ determined that Plaintiff was not disabled. Tr. 26.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by improperly (1) discounting Plaintiff's subjective symptom testimony and (2) weighing the medical opinion evidence.

### I.  Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id*.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that she is married and lives with her husband, her mother, her sister, and her sister's boyfriend. Tr. 35. Plaintiff testified that she did not have a GED. *Id.* Plaintiff does not drive and has never had a driver's license because she is afraid of cars. Tr. 35-36. Plaintiff had previously worked as a hotel housekeeper through 2015 and at a convenience store in 2014 but those jobs fell below the level of substantial gainful activity. Tr. 37-38. Plaintiff's employment lasted less than three days because she suffered a "massive panic attack," needed her mother. Tr. 38. While working at the convenience store, Plaintiff reported that she was yelled at by a customer and "stated having extreme panic attacks," which required her to go home immediately. Tr. 38-39. Plaintiff does not go to school or perform volunteer work. Tr. 39.

When Plaintiff experiences a panic attack, the attack does not stop until Plaintiff is able to see her mother. Tr. 38. If Plaintiff is unable to see her mother during a panic attack, the attack worsens. Tr. 44. Plaintiff's anxiety worsens when her mother goes to work and "it got to the point where every time she'd leave for work, I'd start crying and I'd have to sit in the van and wait outside her job until she got off work." Tr. 45. For several months, Plaintiff would spend the day waiting outside of her mother's workplace but has since been able to remain at home with help

from her sister. Tr. 46. During an attack, Plaintiff testified that her heart races, she begins rocking back and forth and crying, her speech "goes in and out," she becomes confused, and her leg "starts bouncing by itself." Tr. 43. Even at home, loud arguments and raised voices will cause Plaintiff to have a panic attack, which she manages by locking herself in the bathroom. Tr. 46. Plaintiff cannot wash sharp knives or handle sharp objects without triggering a panic attack because she is afraid of cutting herself. Tr. 47. Being alone for long periods of time will also cause panic attacks. *Id.* During a recent panic attack, Plaintiff "self-mutilated" by cutting off her hair. Tr. 47-48. Plaintiff has had to cancel medical appointments, counseling sessions, and meetings with friends because of her panic attacks. Tr. 45.

Plaintiff was unable to say how long she had been seeing a counselor, although she knew it had "been months." Tr. 48. In terms of medication, Plaintiff takes Celexa for anxiety. Tr. 39.

When asked to describe her daily activities, Plaintiff testified that in the morning she sits on the couch and talks to her sister and waits for her mother to get home. Tr. 40. Plaintiff is able to bathe and dress herself, as well as prepare simple meals. Tr. 41. Plaintiff washes dishes. *Id.* Plaintiff does not have internet at home and spends her day doing "[n]othing really," other than playing a game on her phone. Tr. 41-42. Plaintiff able to accompany her mother to shop for groceries, although she has experienced panic attacks while at the store. *Id.*

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20.

The ALJ found that Plaintiff's testimony was not consistent with Plaintiff's treatment history. The ALJ found that Plaintiff did not seek treatment until relatively recently and had only attended 16 counseling sessions. Tr. 21-22. The ALJ also noted that, while there was evidence that Plaintiff benefited from medication, she would stop taking the medication. Tr. 21. The Ninth Circuit has held, however that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (internal quotation marks and citation omitted). "In other words, we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Id.* The Court concludes that the ALJ erred in concluding that Plaintiff's relatively recent efforts at treatment and her inconsistent use of medication undermined her testimony when there is evidence that those failures were connected to Plaintiff's mental impairments. *See, e.g.,* Tr. 577 (Plaintiff "would benefit from counseling, but she may avoid and deny her need for therapy," and noting a well-established pattern of "maladaptive behavior.").

The ALJ found that Plaintiff's testimony was not fully supported by the medical evidence, noting that "[o]n mental status exam, the claimant displayed good eye contact, full range of affect, normal speech, and normal through processes." Tr. 20. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Many of the records cited by the Commissioner are part of physical examinations that predate the relevant period. *See e.g.,* Tr. 300-01 (July 2014, Plaintiff is assessed for depression and receives psychiatric referral); 305 (July 2013 examination for physical complaints); 309-11 (September 2013, Plaintiff

presents as nervous and anxious and was referred for counseling); 313 (October 2013, physical examination); 316 (November 2013, Plaintiff instructed to seek out counseling for depression); 321 (March 2014 physical examination); 333 (April 2014, physical examination). Even accepting that Plaintiff did present at some treatment sessions with normal mood and affect, that lack of support cannot alone sustain an adverse credibility determination. Furthermore, Plaintiff underwent mental status examinations elsewhere in the record which did record symptoms consistent with Plaintiff's allegations. Tr. 291 (reporting "somewhat flat" affect and mild-to-moderate anxiety); 476 (reporting flat affect, Plaintiff appeared "quite nervous," preoccupation with fears and phobias, and past suicidal ideation); 563 (Plaintiff "pretty nervous," with anxious affect, mild fidgeting, and a history of suicidal ideation). On this record, the Court concludes that the ALJ erred in concluding that Plaintiff's testimony was not supported by the record.

The ALJ also made some factual findings that were not supported by the record in assessing Plaintiff's testimony. The ALJ noted that "despite the mild intellectual disability, the claimant earned a modified diploma from Churchill High School." Tr. 22. This finding is not supported by the record. The exhibit cited by the ALJ shows that Plaintiff attended Churchill High School between 2009 and 2010, working towards a modified diploma as part of the class of 2013, but she left the school in October 2010 and the sections for Plaintiff's graduation date are blank. Tr. 284. Plaintiff briefly attended Willamette High School in 2011, but there is no record of Plaintiff graduating from that institution. Tr. 285. For her part, Plaintiff has consistently reported dropping out of high school in the tenth grade, Tr. 216, 475, 562, and testified at the hearing that she had not earned a GED. Tr. 35. The Commissioner has not identified any evidence showing that Plaintiff has a modified diploma.

Additionally, the ALJ found that Plaintiff's claims concerning needing her mother to calm down from a panic attack were undermined by medical records showing that Plaintiff sometimes attended medical treatment sessions without her mother's company. Tr. 22. The ALJ also noted that Plaintiff appeared at the hearing without her mother. Tr. 21. Plaintiff did not testify, however, that she was unable to be apart from her mother. Rather, she testified generally to dependency and separation issues, Tr. 38, which are borne out by the record. *See, e.g.,* Tr. 556-57.

The ALJ also noted that Plaintiff "alleged having a panic attack" during the hearing but "this did not interfere with her ability to tract the conversation or respond to questioning," and that "[m]oreover, she was able to do so without having her mother present." Tr. 21. This is not what Plaintiff testified, however. During questioning about how Plaintiff arrived at the hearing, Plaintiff testified that her mother drove her and that she had a "slight panic attack here, but we made it." Tr. 36. Read in context, Plaintiff did not say that she was having a panic attack during her testimony, but rather that she had had a "slight panic attack" while her mother was driving her to the hearing. Furthermore, an ALJ's personal observations cannot, standing alone, support discounting the Plaintiff's subjective symptom testimony. *Orn v. Astrue*, 495 F.3d 625, 639-40 (9th Cir. 2007). The Court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony on that basis.

On this record, the Court concludes that the ALJ failed to give clear and convincing reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony. The Court further concludes that this error was harmful.

**II.    Medical Opinion Evidence**

Plaintiff asserts that the ALJ erred by discounting the opinions of examining psychologists Scott Alvord, Psy. D., and Claudia Lake, Psy. D.

The Social Security Administration has altered the regulation which govern the evaluation of medical evidence for claims filed on or after March 27, 2017. *Farlow v. Kijakazi*, 53 F.4th 485, 488 n.3 (9th Cir. 2022). This claim was filed on November 1, 2016 and so the older system applies. Tr. 14.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. Alvord

Dr. Alvord performed a psychological evaluation of Plaintiff on September 10, 2018. Tr. 561. Plaintiff had difficulty leaving her mother in the waiting room during the exam and Dr. Alvord observed that Plaintiff was tearful and fidgeted during the examination and that she had an anxious affect. Tr. 563. Plaintiff admitted to suicidal ideation but denied attempts. *Id.* Dr. Alvord noted a "history of unstable relationships, emotional lability, and self-harm in the form of cutting her own hair." Tr. 564. Dr. Alvord diagnosed mild intellectual impairment, moderate PTSD, depressive disorder not otherwise specified, and borderline personality traits. Tr. 564-65. Dr. Alvord concluded:

> A combination of historical trauma, PTSD indicators, etc. does lead me to believe
> she will struggle to function in an employment setting that involves authoritarian

supervisors or overly demanding patrons. She may be able to function on some capacity in a more isolative/repetitive/simple work environment although borderline intellectual limitations will exacerbate psychiatric symptoms as she will likely struggle to learn new materials which may increase anxiety.

Tr. 565.

Dr. Alvord prepared a medical source statement of Plaintiff's ability to do work related activities. Tr. 566-69. Dr. Alvord indicated that Plaintiff had moderate limitations to her ability to understand, remember, and carry out simple instructions. Tr. 567. Plaintiff has marked limitations in her ability to make judgments on simple work-related decisions; understand, remember, and carry out complex instructions; and her ability to make judgments on complex work-related decisions. *Id.* Plaintiff would have moderate impairments to her ability to interact appropriately with the public and marked limitations to her ability to interact appropriately with supervisors and coworkers and to her ability to respond appropriately to usual work situations and changes to routine work settings. *Id.*

The ALJ gave "very little weight" to Dr. Alvord's opinion, finding that it was "both overly vague in assessing the severity of the claimant's difficulties, and out of proportion to his mental status exam and clinical interview of the claimant." Tr. 24.

With respect to vagueness, the check box form completed by Dr. Alvord contains specific definitions for the degrees of limitation. Tr. 566. As relevant to the assessment of Plaintiff, the form defined a "moderate" limitation as "There is more than a slight limitation in this area but the individual is still able to function satisfactorily," and defines "marked" limitations as "There is serious limitation in this area. There is a substantial loss in the ability to effectively function." *Id.* The check box form is accompanied by five page psychological evaluation in which Dr. Alvord made detailed observations. Tr. 561-65. The Court concludes that the "vagueness" of Dr. Alvord's report does not supply a specific and legitimate reason to discount his opinion.

The ALJ noted that Dr. Alvord's "opinion for marked limitations in social functioning is inconsistent with his observations of the claimant as anxious and slightly tearful during the interview, but able to leave her mother in the waiting room." Tr. 24. As previously discussed, Plaintiff has not alleged a complete inability to be apart from her mother, but rather has alleged a dependency on her mother. This is consistent with Dr. Alvord's observation that Plaintiff had difficulty leaving her mother in the waiting room and required encouragement to perform the interview by herself. Tr. 563. Even then, Plaintiff was tearful and visibly anxious during the examination. *Id.* The ALJ's finding of inconsistency is not supported by the record.

Finally, the ALJ found that Dr. Alvord overstated Plaintiff's social function limitations because she was "able to cooperate with the exam and respond to questioning," and that, in other examinations Plaintiff had been able to cooperate with examinations and maintain eye contact. Tr. 24. Plaintiff points out that this amounts to improper focus on a "mere scintilla" of evidence. The Court concludes that, where it is a mere scintilla or not, it falls well short of specific and legitimate reasons supported by substantial evidence.

In sum, the Court concludes that the ALJ erred in discounting the opinion of examining psychologist Dr. Alvord and this error was harmful.

**B.  Dr. Lake**

Dr. Lake performed a psychological examination of Plaintiff on October 28, 2015. Tr. 474. Based on the examination, Dr. Lake diagnosed Plaintiff with an unspecified intellectual impairment, PTSD, panic disorder, agoraphobia, and dependent personality disorder. Tr. 477. Dr. Lake assessed Plaintiff's prognosis as "poor because of her agoraphobia, panic, and dependency which is part of her maladaptive behavior." *Id.* Dr. Lake opined that Plaintiff would not have difficulty with simple and repetitive tasks but would have difficulty performing detailed and

complex tasks. *Id.* Plaintiff would have difficulty interacting with coworkers and the public and "would panic easily if she had to work with other coworkers and the public." Tr. 478. Plaintiff would have difficulty "performing work activities on a consistent basis without special or additional instructions," and has "some difficulty processing more complex information." *Id.* She would have difficulty maintaining regular attendance due to agoraphobia and the need to travel with a family member. *Id.* Plaintiff would also have difficulty "completing a workday/workweek without interruptions from a psychiatric condition," and "would have difficulty dealing with the usual stress encountered in the workplace" due to significant phobias and dependence on family members. *Id.*

The ALJ gave "[v]ery little weight" to Dr. Lake's opinion, finding that it was "overly reliant on Plaintiff's subjective statements," and "not consistent with the record as a whole." Tr. 24. "A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation marks and citation omitted). Here, the Court has already determined that the ALJ improperly rejected Plaintiff's subjective testimony for the reasons discussed above. In addition, the Ninth Circuit has held that when a physician conducts a clinical interview and mental status examination, as Dr. Lake did, those "are objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

With regard to consistency with the record, the ALJ specifically noted that, during Dr. Lake's examination, Plaintiff "required the medical assistant to take her down to the parking lot where her boyfriend was in order to wait for her mother who was meeting with this examiner." Tr. 24, 478. The ALJ noted that Plaintiff was only sometimes accompanied by her mother when

attending treatment sessions and found that "such dependency is not observed elsewhere in the record." As previously noted, however, Plaintiff has not alleged that she is entirely unable to be apart from her mother but has instead alleged a dependency on her mother which is supported by the record and Plaintiff's testimony. *See, e.g.*, Tr. 563 (During Plaintiff's evaluation by Dr. Alvord, Plaintiff struggled to leave her mother in the waiting room).

On this record, the Court concludes that the ALJ failed to give adequate justification for discounting the medical opinion evidence of Dr. Lake. The Court further concludes that this error was harmful.

### III.     Remedy

As discussed above, the Court has concluded that the ALJ's determination contained harmful error, necessitating remand. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

Here, the Court has determined that the ALJ erred by discounting the medical opinions of Dr. Alvord and Dr. Lake and by discounting the subjective symptom testimony of Plaintiff. The Commissioner does not identify, and the Court has not found, any outstanding issues that must be

Page 14 – OPINION & ORDER

resolved. The Court concludes that the record is complete and that no purpose would be served by a remand for further proceedings. Crediting the improperly discounted opinions and reviewing the record as a whole, the Court is satisfied that Plaintiff is disabled and that a remand for award of benefits is warranted in this case.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for calculation and award of benefits. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___6th___ day of April 2023.

       /s/Ann Aiken
       ANN AIKEN
       United States District Judge